# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**KATHERINE E. PEREIRA,**

        **Plaintiff,**

**v.**                                       **Case No: 6:12-cv-1831-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OF DECISION

The Plaintiff Katherine E. Pereira (the "Claimant") brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income. Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to: (1) show good cause, supported by substantial evidence, for giving limited weight to the opinion of Claimant's treating physician, Dr. Mladen Antolic (Doc. No. 17 at 13-14); (2) provide specific and adequate reasons for finding Claimant's subjective statements not credible (Doc. No. 17 at 15-16); and (3) consider certain evidence in determining Claimant's residual functional capacity (the "RFC") (Doc. No. 17 at 10-12). For the reasons set forth below, it is **ORDERED** that the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

I.      **ANALYSIS.**

    **A.  Dr. Antolic.**

Claimant argues that the ALJ failed to demonstrate good cause for giving Dr. Antolic's opinion (R. 404-05) limited weight.  Doc. No. 17 at 13-14.  The Commissioner contends that the ALJ's reasons for giving limited weight to Dr. Antolic's opinion are supported by substantial evidence.  Doc. No. 18 at 14-15.  For the reasons set forth below, the Court agrees with Claimant, and finds that the final decision is not supported by substantial evidence.

The ALJ's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's sequential evaluation process for determining disability.  In cases like this one, involving the ALJ's handling of a treating physician's medical opinion, "substantial-evidence review . . . involves some intricacy."  *Gaskin v. Commissioner of Social Security*, 533 Fed.Appx. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[1]  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever

---

[1] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments; and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).

Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Anderson*

*v. Astrue,* No. 3:12-cv-308-J-JRK, 2013 WL 593754 at *5 (M.D. Fla. Feb. 15, 2013) (ALJ must do more than recite a good cause reason to reject treating physician opinion and must articulate evidence supporting that reason) (citing authority); *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

In this case, Dr. Antolic treated Claimant approximately twenty-eight (28) times between September 24, 2007 and August 19, 2010, for injuries sustained in a May 4, 2007, motor vehicle accident.  R. 235-64, 394-403.  On September 24, 2007, Claimant presented to Dr. Antolic for pain management and treatment of her injuries.  R. 255-56.  Physical examination revealed limited range of motion in the cervical and lumbar spine, 4/5 muscle strength, no diffuse weakness, positive straight leg raises in sitting position, and diffuse tenderness with significant trigger points and paravertebral muscle spasms on the right.  R. 255-56.  Claimant was able to stand and ambulate, but with difficulty standing and walking on toes and heels.  R. 256.  Dr. Antolic's impressions were myofascial pain of the cervical and lumbar spine, and pain radiating into the left lower extremity with numbness.  R. 256.  He ordered a magnetic resonance imaging (the "MRI") of the lumbar spine and an electromyogram study ("EMG").  R. 256.

The September 25, 2007 MRI revealed a herniated nucleus populous at the L4-L5 and L5-S1 levels with bilateral neural foramina.  R. 263-64.  The EMG was positive for left S1 radiculopathy.  R. 260-62.  Dr. Antolic's treatment notes from September 25, 2007 through October 25, 2007, show that Claimant continued to experience significant pain and spasms in the

cervical and lumbar spine with intermittent radiation of pain into her lower extremities and reduced range of motion.  R. 248-54.  Dr. Antolic provided trigger point injections, other unspecified modalities, and prescribed medications.  R. 252.

On October 25, 2007, Dr. Antolic's physical examination continued to show restricted range of motion with diffuse tenderness and a significant amount of trigger points with muscle spasm on the right side, but negative straight leg testing and normal strength.  R. 246.  Dr. Antolic opined that Claimant has a 14% total body, permanent impairment and her "[f]uture limitations will include limited overhead work, no prolonged sitting and no lifting objects greater than 15 pounds."  R.  246-47.[2]

From November 8, 2007 through January 7, 2008, Dr. Antolic's treatment records show that Claimant experienced increased pain and spasms in her cervical and lumbar spine, but medication and modalities helped to control the pain.  R. 241-44.  On January 21, 2008, Claimant underwent a lumbar laminectomy at the L4-L5, a discectomy at that level, and a segmental fusion at L5-S1.  R. 225-26, 306.  Dr. Antolic's February 5, 2008, treatment notes reveal that while Claimant continued to experience constant pain in the low back, she felt somewhat better following surgery.  R. 240.

In March of 2008, Claimant experienced a spinal fluid leak and underwent surgery to repair the leak.  R. 306.  A May 1, 2008, MRI of the cervical spine revealed: mild disc bulging at C4-5; moderate disk bulging at C5-6 with broad based posterior disk herniation associated with a radial tear; bilateral facet hypertrophy; severe right neural foraminal stenosis; mild to moderate left neural foraminal stenosis; and neural encroachment, but no evidence of cord compression.  R. 349-

---

[2] Dr. Antolic's statement is clearly an opinion under the *Winschel* standard (*see* 631 F.3d at 1178-79).  The ALJ, in her January 21, 2011 decision, does not discuss or mention Dr. Antolic's October 25, 2007 opinion.  *See* R. 16-27. Nevertheless, Claimant raises no issue on appeal with respect to the ALJ's handling of that particular opinion.  Doc. No. 17.

50. Dr. Antolic's May 5, 2008 treatment note shows constant pain despite lumbar surgery, reduced range of motion, and muscle spasms.  R. 239.  A May 28, 2008, MRI of the lumbar spine showed a "broad-based posterior disk herniation at L4-5, which has increased in size compared with the previous MRI."  R. 259.   Thus, Claimant's L4-L5 disk herniation increased in size post-surgery. R. 259.

Dr. Antolic's treatment records from May 12, 2008 through May 14, 2009, show that Claimant continued to experience chronic pain in cervical, thoracic, and lower back regions, she displayed restricted range of motion, and she had pain radiating into her shoulders and lower extremities, but medication and modalities did provide some relief of symptoms.  R. 235-38, 400-03.[3]  On July 30, 2009, Claimant reported that her medications make a real difference in her life,

---

[3] On September 4, 2008, Claimant's treating orthopedic surgeon, Dr. Frank B. Gomes, provided the following opinion:

> We have reviewed the medical records. . . .  The patient was seen initially on 12/11/07.  The patient suffered a severe motor vehicle accident on 5/4/07.  The patient suffered severe injuries to the neck and to the low back.  She was diagnosed to have lumbar disc protrusions at L4-5 and L5-S1 as a result of this accident.  The patient underwent surgery . . . on 1/21/08.  A lumbar laminectomy at L4-5, discectomy at L4-5, and inspection of the L5-S1 interspace were carried out along with a segmental fusion.  The patient was found to have a large disc herniation with a tear at L4-5.  Immediate post-op was eventful, however, the patient developed spinal fluid leak post-op and had to be re-operated on and a repair of her spinal fluid leak was carried out on 3/10/08.  The patient had slow but progressive recovery.  The patient was last seen on 7/22/08.  Primarily she has residual low back pain, aggravated with activities and has intermittent left gluteal pain and numbness.  The patient has also developed a history coccydynia.  The patient also has been diagnosed to have disc protrusions primarily at C5-6 and C6-7, more markedly at C5-6 with a tear at that level.  I believe she will end up requiring surgery in the future for the cervical spinal injuries.  The patient has achieved maximum medical improvement as of 7/22/08.  The patient has chronic low back pain and has developed severe neck pain and intractable headaches.  The patient has been followed up [sic] a pain management specialist.  She has chronic facet joint pain giving her chronic low back pain and also the coccygeal pain has not resolved.  Based on the severity of the injuries and ongoing symptoms, it is my opinion within reasonable medical probability that this patient will not be able to return to substantial gainful employment.  In my opinion this patient has a total and permanent disability.  The patient needs life long followup [sic] by a pain management specialist and/or neurologist to address the chronic pain syndrome and to address the migraine headaches.  Eventually, she also may require a general

and that her ability to perform activities of daily living is better.  R. 399.   Dr. Antolic noted that Claimant has good functionality as a result of her medications.  R. 399.   From May 6, 2010 through August 19, 2010, Dr. Antolic's treatment notes state that Claimant's ability to perform activities of daily living is either the same or worse than the prior treatment note, and her level of pain remains high.  R. 394-97.

On August 24, 2010, Dr. Antolic completed a Physical Capacities Evaluation.  R. 404-05. Dr. Antolic opined that: Claimant can sit for less than 2 hours and stand for less than 2 hours in an eight-hour workday; she can occasionally lift up to 5 pounds; she can perform simple grasping and fine manipulations with both hands, but she cannot push or pull with arm controls; she cannot use her right or left leg for pushing and pulling of leg controls; Claimant requires a twenty minute rest period every hour during an eight-hour workday; and she will need to lie down for substantial periods during a normal workday.  R. 404-05.  Dr. Antolic opined that these limitations have existed since at least June 1, 2008.  R. 405.

In the decision, the ALJ determined at step-two of the sequential evaluation process that Claimant has the following severe impairments: "herniated nucleus pulposus at L4-L5 and L5-S1 status post laminectomy at L4-L5 with recurrent herniation at L4-L5 and nerve root impingement; spinal stenosis in the lumbar spine; cervical dysfunction variously described as minimal bulging, tear and spondylitic changes; coccydynia; and a mental impairment variously described as depressive disorder, adjustment disorder with depressed mood and pain disorder."  R. 18.  The ALJ found that Claimant retains the RFC for light work with additional limitations, including:

surgeon to deal with the coccydynia through surgical intervention if further pain management fails.  Please let me know if you need further information.

R. 30.   In her decision, the ALJ states that Dr. Gomes provided a statement that Claimant is "unable to return to substantial gainful employment because of her condition status-post two spinal surgeries. . . .   I give this opinion no weight as it opines on an issue, which is reserved for the Commissioner."  R. 24.  On appeal, the Claimant raises no specific allegation of error with respect to the ALJ's handling of Dr. Gomes's opinion.  See Doc. No. 17 at 13-15.

> [C]laimant has the capacity to occasionally lift and carry 20 pounds
> and to frequently lift and carry 10 pounds.  The claimant has the
> capacity to frequently push and pull up to the weight capacity for
> lifting and carrying. The claimant has the capacity to stand and walk
> 6 hours in an 8-hour workday and has the capacity to sit 6 hours in
> an 8-hour workday.  The claimant requires the ability to change
> positions while at work but this need can be met at normal break and
> meal periods.  The claimant has the capacity to frequently balance,
> and to occasionally stoop, kneel, crouch, crawl, and climb stairs and
> ramps.  The claimant has no limitations in handling, fingering,
> feeling, or reaching, except overhead, which is limited to
> occasionally.  Considering the claimant's subjective complaints of
> pain and symptoms of her mental impairment, mentally the claimant
> has the capacity to understand, remember, and carry out simple,
> routine tasks. The claimant has the capacity to appropriately interact
> with supervisors, coworkers and the general-public.  The claimant
> has the capacity to identify and avoid normal work place hazards
> and to adapt to routine changes in the work place.

R. 20.  Thus, the ALJ's RFC conflicts with Dr. Antolic's opinion, which is more restrictive.
*Compare* R. 20 *with* R. 404-05.

In the decision, the ALJ states that after her surgeries, Claimant followed up with Dr.
Antolic in June and July of 2008 for pain management, and he found limited range of motion in
the lumbar spine.  R. 21.  The ALJ's decision does not contain any discussion of Dr. Antolic's
prior treatment notes.  R. 20-25.  The ALJ states that in November of 2008, May of 2009, and May
through August of 2010, Claimant returned to Dr. Antolic complaining of severe pain, requesting
medication refills, and that she displayed limited range of motion on physical examination.  R. 22-
24.  With respect to Dr. Antolic's 2010 treatment notes, the ALJ states that "[a]lthough no
limitations or physical examination was documented from these visits, treatment notes do indicate
that the claimant showed good functionality and response to her opioid therapy."  R. 24.

In the section of the decision dealing with medical opinion evidence, the ALJ states the
following:

> In August of 2010, Dr. Antolic, the claimant's pain management
> doctor, opined that the claimant is able to sit and stand for a total of

> two hours in an eight-hour workday; occasionally lift up to five
> pounds; is unable to use her feet for repetitive work and requires a
> twenty-minute rest period per hour.  He stated that the claimant is
> able to perform simple grasping and fine manipulation but cannot
> push or pull with her upper extremities.  I give this opinion limited
> weight and find that it is not supported by his own treatment notes
> which show no objective measures of limitations, but, instead is
> based on the claimant's subjective complaints.

R. 24.  Thus, the ALJ gave "limited weight" to Dr. Antolic's August 2010 opinion because it is not supported by this own treatment notes, which show "no objective measures of limitations," and because the opinion is based on Claimant's subjective complaints.  R. 24.

The ALJ's reasons for giving limited weight to Dr. Antolic's August 2010 opinion are not supported by substantial evidence for three principle reasons.   First, the Court is unaware of any regulation, rule, or other legal authority requiring a treating physician's treatment notes to contain "objective measures of limitations."   Treatment notes, as opposed to medical evaluations intended to determine an individual's functional limitations, usually contain examination findings, symptoms, diagnoses, and treatment recommendations, not statements of functional limitations.  Second, in this case, Dr. Antolic's treatment notes actually do contain objective testing results and limitations.   Dr. Antolic ordered three MRI's and an EMG study, the results of which are detailed above.   Moreover, Dr. Antolic's October 25, 2007 treatment note states that Claimant has a 14% total body, permanent impairment and her "[f]uture limitations will include limited overhead work, no prolonged sitting and no lifting objects greater than 15 pounds."  R. 246-47 (emphasis added).  Third, the ALJ's statement that Dr. Antolic's opinion is based on Claimant's subjective complaints is wholly conclusory.   While the ALJ did recite a good cause reason to reject or give limited weight to Dr. Antolic's opinion, *i.e.* that the opinion is not supported by his treatment notes, the ALJ failed to articulate the evidence supporting that reason.  *See Anderson v. Astrue,* No. 3:12-cv-308-J-JRK, 2013 WL 593754 at *5 (M.D. Fla. Feb. 15, 2013) (ALJ must do more than recite a

good cause reason to reject treating physician opinion and must articulate evidence supporting that reason). Accordingly, the Court finds that ALJ failed to demonstrate good cause, supported by substantial evidence, for giving limited weight to Dr. Antolic's 2010 opinion, which is reversible error.

### B.  Other Issues.

Claimant argues that ALJ also erred by failing to provide specific and adequate reasons for finding her subjective complaints not credible and by not considering all of the evidence in determining Claimant's RFC.  Doc. No. 17 at 10-12, 15-16.   This case must be reversed and remanded due to the ALJ's errors with respect to Dr. Antolic's opinion.   On remand, the ALJ will necessarily have reconsider all of the evidence, including the Claimant's subjective statements, and make a new RFC determination.   Accordingly, it is unnecessary to determine if the ALJ also erred with respect to the Claimant's credibility and by failing to consider other evidence.

## II.   <u>CONCLUSION.</u>

Claimant requests reversal and a remand for an award of benefits or, alternatively, a remand for further proceedings.  Doc. No. 17 at 17.  The evidence in this case is conflicting.  *See generally* R. 213-405.  While two treating physicians opined that Claimant's impairments and the limitations stemming therefrom prevent her from performing substantial gainful activity (*see* R. 246-47, 306, 404-05), other evidence suggests that Claimant is not so limited (*see* R. 313-20, 336-43).  It is for the ALJ, not the Court, to properly weigh and resolve these conflicts in the evidence.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (court may not reweigh the evidence or substitute its opinion for that of the Commissioner).[4]

Based on this record, the Court finds that a remand for further proceedings is appropriate.

---

[4] On remand, the ALJ should carefully consider and weigh all of the opinions from Claimant's treating physicians, including Dr. Gomez.  *See* R. 306.

For the reasons stated above, it is **ORDERED** that:

1.      The final decision of the Commissioner is **REVERSED** and **REMANDED** for

further proceedings pursuant to sentence four of Section 405(g); and

2.      The Clerk is directed to enter judgment in favor of the Claimant and against the

Commissioner; and

3.      The Clerk is directed to close the case.

**DONE AND ORDERED** in Orlando, Florida on February 7, 2014.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE



The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Offices of Shea A. Fugate
P.O. Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Angela Miranda
Administrative Law Judge
c/o Office of Disability Adjudication and Review
National Hearing Center
5107 Leesburg Pike
Falls Church, VA 22041